**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. 1:15-cv-00546-TWT |
| MARTIN L. SILBIGER, | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff First American Title Insurance Company ("FATIC" or "Plaintiff"), by and through its counsel of record, submits this brief in support of its motion for summary judgment, showing the Court as follows:

## I.    INTRODUCTION

This is a declaratory judgment action concerning coverage under a title insurance policy (the "Policy") issued by Plaintiff to Defendant Martin L. Silbiger in 2005 ("Defendant" or "Silbiger").  The Policy insures Defendant's ownership interest in Lot 6 of Draycott Place, a residential subdivision in Fulton County, Georgia ("Lot 6" and "Draycott Place").  Like all title insurance policies, the Policy

insures against title defects, not against property damage, and the Policy provides retrospective rather prospective coverage.[1]  With limited exceptions, the Policy insures only against certain "Covered Risks" already existing as of the effective date of the Policy.[2]  The Policy also contains an express exclusion for matters "that first occur after the Policy Date".  In this case, the "Policy Date" is undisputed – it is February 22, 2005, the date Defendant acquired Lot 6.  Nevertheless, Defendant contends the Policy obligates FATIC to pay for losses resulting from property

---

[1] In Georgia, title insurance is defined by statute as being "insurance of owners of real property or others having an interest in such real property, or liens or encumbrances on such real property, against loss by encumbrance, defective titles, invalidity, adverse claim to title, or unmarketability of title by reason of encumbrance or defects not excepted in the insurance contract".  O.C.G.A. § 33-7-8 (2015).  *See also Fidelity National Title Insurance Company v. Keyingham Investments, LLC* 288 Ga. 312, 313, 702 S.E.2d 851, 854 (2010) (title insurance protects an insured from "losses resulting from title defects not discoverable from a search of the public records [conducted prior to or on the date of the policy], such as forgery, missing heirs, previous marriages, impersonation, or confusion in names") (Internal citation and punctuation omitted; emphasis added).  Thus, title insurance policies differ from other types of insurance policies in that title insurance provides coverage against adverse legal or equitable claims of interest in the insured property (such as a claim of easement rights, or a claim of mineral rights, for example), while other types of insurance policies, such as homeowner's and auto owner's insurance, provide coverage for damage to property or injury to persons.

[2] This is in contrast to most other types of insurance policies which generally provide prospective coverage, insuring against the happening of future events.  For example, auto owner's insurance insures against losses resulting from accidents occurring after the effective date of the policy, and health insurance insures against expenses incurred for medical treatment received after the effective date of the policy.

damage purportedly incurred (the "Losses")[3] not as the result of a defect in Defendants' title, but as the result of an undisputed post-Policy event involving the failure of a physical structure, namely, the 2014 collapse of the concrete lid of an underground storm-water detention vault located on Lot 6 (the "Vault" and the "Collapse").

Plaintiff contends the Losses are not covered by the Policy for multiple reasons, including that the Losses arise from structural failures that are not covered by title insurance at all and they undisputedly arise from a post-policy event, *i.e.*, the Collapse, which occurred in February of 2014. Additionally, Plaintiff contends the Losses are not covered by the Policy because the Policy expressly excepts from coverage losses arising by reason of "(c)ovenants, conditions, restrictions, easements and servitudes" and the collapsed Vault is the subject of a recorded covenant. Specifically, the Vault is the subject of a recorded indemnity agreement given by Defendant's predecessor in title to the City of Atlanta.[4] Because Defendant contends

---

[3] For purposes of its Motion for Summary Judgment (the "MSJ"), Plaintiff assumes arguendo, without waiver of its ability to contest at trial or otherwise, that Lot 6 was damaged as a result of the Collapse in the amount alleged by Defendant and that Defendant suffered the alleged Losses.

[4] Plaintiff contends it has no liability relating to the Collapse for multiple reasons, including: (1) the Collapse is not a "Covered Risk", as that term is defined in the Policy, (2) even if the Collapse is a "Covered Risk", coverage for the Collapse is excluded by one or more Policy exclusions, including the exclusion for post-Policy

his Losses are covered by the Policy, but Plaintiff believes Defendant's Losses are not covered, Plaintiff brought this action seeking a determination as to whether the Losses are covered and, if so, to what extent.

## II. PROCEDURAL SUMMARY

Plaintiff filed its Complaint for declaratory judgment [Doc. 1] (the "Complaint") on February 24, 2015. Defendant timely filed his Answer and Counterclaim (the "Answer") on March 9, 2015, to which Plaintiff timely filed its answer on March 27, 2015. This matter is now before the Court on Plaintiff's MSJ.

## III. UNDISPUTED MATERIAL FACTS

In 1997, Paramount Builders of Georgia, LLC ("Paramount Builders") acquired an approximate three (3) tract of land in Fulton County, Georgia (the

---

events, (3) even if the Collapse is a "Covered Risk", coverage for the Collapse is subject to one or more Policy exceptions, including the exception for losses arising by reason of "(c)ovenants, conditions, restrictions, easements and/or servitudes", and (4) Defendant failed to satisfy certain conditions of the Policy, including promptly notifying Plaintiff of the claim, which prejudiced Plaintiff's ability to investigate the claim. However, in an effort to more quickly resolve this dispute and to avoid additional costs, Plaintiff now moves for summary judgment under only two theories. First, that the Losses are excluded from coverage because the Losses undisputedly arise from a post-Policy event and, secondly, that the Losses are excepted from coverage because the Vault is the subject of a recorded covenant, *i.e.*, the recorded indemnity agreement in favor of the City of Atlanta entered into by Defendant's predecessor in title. Plaintiff notes that neither Fed. R. Civ. P. 56 or the local rules limit a party to one summary judgment motion. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1188 (11th Cir 2005); *see also* L.R. 56.1.

"Parent Tract"). **Plaintiff's Theory of Recovery and Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("SOF") at ¶5.** Subsequently, Paramount Builders subdivided the Parent Tract into six (6) residential lots which now comprise Draycott Place. **SOF at ¶6.** These six (6) lots are depicted on the subdivision plat recorded in Plat Book 201, Page 87, Fulton County, Georgia real property records and re-recorded at Plat Book 209, Page 13 (the "Recorded Plat"). **SOF at ¶7.** A true and copy of the Recorded Plat, as originally recorded, is attached to the Complaint as Exhibit "C." **SOF at ¶7.**

As part of the development of Draycott Place, Paramount Builders constructed two (2) underground storm water detention vaults to collect storm water run-off from the lots within the subdivision. **SOF at ¶9.** The Vault at issue in this case is one of the two (2) vaults constructed by Paramount Builders. **SOF at ¶9.** The location of each vault is a matter of public record. **SOF at ¶¶10-14.** The Vault at issue in this case is depicted on the Recorded Plat. **SOF at ¶¶10-11.** Additionally, the existence of the Vault on Lot 6 is a matter of public record because the Vault is the subject of a recorded indemnity agreement between Paramount Builders and the City of Atlanta (the "Indemnity Agreement"). **SOF at ¶¶11-14.** The Indemnity Agreement was originally filed on October 17, 1997, in Deed Book 23267, Page 50, aforesaid records, and was subsequently re-filed on October 21, 1997, in Deed Book 23276,

Page 266.  **SOF at ¶¶11, 13.**  The Vault is pictured on the drawings attached to the

Indemnity Agreement which appear of record at pages 52 and 54 of Deed Book

23267.  **SOF at ¶12.**  And, filed with the re-recorded Indemnity Agreement are

detailed drawings of the Vault appearing of record at pages 268 and 269 of Deed

Book 23276.  **SOF at ¶14.**  A true and correct copy of the Indemnity Agreement, as

re-recorded, is attached to the Complaint as Exhibit "E."  **SOF at ¶¶11-14.**

On February 22, 2005, Defendant purchased Lot 6 from the then owners, Tom

and Donna Anderson.[5]  **SOF at ¶18.**  Defendant's purchase of the Property is

evidenced by the Warranty Deed recorded in Deed Book 39606, Page 419, aforesaid

records (the "Anderson Warranty Deed").  **SOF at ¶19.**  A true and correct copy of

the Anderson Warranty Deed is attached to the Affidavit of Joanne V. Capeloto

("Capeloto Aff.") as Exhibit "H."  Concurrent with his purchase of Lot 6, Defendant

purchased the Policy from Plaintiff, through its policy issuing agent, James Sibold

& Associates, LLC.  **SOF at ¶20.**  A true and correct copy of the Policy is attached

to the Complaint as Exhibit "A."[6]  **SOF at ¶21.**

---

[5] On June 21, 2013, Defendant, by way of a general warranty deed, transferred title
to Lot 6 to himself and Patricia M. Silbiger ("Mrs. Silbiger"), his wife, as joint
tenants with rights of survivorship (the "Silbiger Deed").  A true and correct copy of
the Silbiger Deed is attached to the Complaint as Exhibit "B."  **SOF at ¶30.**
[6] A true and correct copy of the full Policy, as attached to the Complaint at Exhibit
"A," consists of a total of five (5) pages.  **SOF at ¶21.**  Defendant contends that he
did not receive all the pages of the Policy at the time he purchased the Property and

On February 14, 2014, more than ten (10) years after the effective date of the Policy, during a period of rainfall, the lid of the Vault, or a portion thereof (the "Vault Lid"), collapsed into the interior of the Vault. **SOF at ¶31.** The Collapse resulted in damage to Lot 6, including causing trees that had been planted on top of the Vault to fall onto the Silbigers' residence, causing minor damage. **SOF at ¶32.** After the Collapse, Defendant sought coverage for his purported losses from his homeowner's insurance carrier, Encompass Insurance Company ("Encompass"). **SOF at ¶33.** Encompass denied the claim. **SOF at ¶34.** Defendant also turned to the City of Atlanta to pay for his purported losses. **SOF at ¶35.** On March 10, 2014 the City of Atlanta's Department of Law informed Defendant that "the failed stormwater detention vault structure…is the sole responsibility of the owners of Lot 6 [the Silbigers] and possibly the other private owners in the Draycott Place Subdivision". **SOF at ¶36.** A true and correct copy of the March 10, 2014 letter from the City of Atlanta is attached to the Complaint as Exhibit "D." Although the City informed the Silbigers that the City contended it was not obligated to repair the Vault, and the

---

Policy. **SOF at ¶22.** Nevertheless, the Policy states on the first page that "Your insurance is limited by all of the following:…The Policy Amount shown in Schedule A…Exceptions in Schedule B…Exclusions on page 2, and Conditions on page 3." **SOF at ¶23.** Additionally, the Policy states on page 1 that "[t]his Policy is not complete without Schedules A and B." **SOF at ¶23.**

City cited the Indemnity Agreement as the basis of this contention, the City did <u>not</u> demand nor require the Silbigers, nor the other property owners in Draycott Place, to repair or replace the collapsed Vault lid. **SOF at ¶37.**

Although not required to do so by the City, or by any other party, the Silbigers, at their own expense, voluntarily undertook excavation and repair work on the collapsed Vault lid, along with other work to replace and/or restore certain of their improvements impacted by the Collapse (the "Work"). **SOF at ¶38.** By April 18, 2014, the Silbigers had completed a substantial portion of the Work in that they had "successfully uncovered" the Vault, removed "(t)he trees, collapsed lid, and dire," and "shored up for safety" the "surrounding 6 to 8 feet of soil." **SOF at ¶39.** In fact, the Vault Lid was removed and destroyed, prior to notifying FATIC of any potential claim, thus depriving FATIC of an opportunity to inspect the failed Vault Lid. **SOF at ¶40.**

It was not until June 22, 2014, over four (4) months after the Collapse, and only after their claims were denied by Encompass and by the City of Atlanta, that Defendant first notified FATIC of the Collapse and Defendants' contention that the Losses were covered by the Policy. **SOF at ¶41.**

## IV.  ARGUMENT AND CITATIONS TO AUTHORITY

As discussed below, the Losses arise from the 2014 Collapse of the Vault Lid, which is a post-Policy for which the Policy provides no coverage.  Thus, FATIC has no liability to Defendant for the Losses.

### A.  Plaintiff Is Entitled to Summary Judgment on Its Complaint

#### 1.  *Summary Judgment Procedural Standard*

Summary judgment is proper when "there is no genuine dispute as to any material fact . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Furthermore:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To be material, a fact must be identified by the controlling substantive law as an essential element of the non-moving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the non-movant must "go beyond the pleadings and . . . 'designate specific facts showing that there is a genuine issue for trial'" to avoid summary judgment. *Celotex*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)). In reviewing the record, the Court must construe the facts and

make all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.

### 2. *Legal Standard For Granting Summary Judgment in an Insurance Coverage Dispute*

Under Georgia law, "[a]n insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 749, 707 S.E.2d 369, 371 (2011). "[G]enerally contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." *Terry Hunt Constr. Co. v. AON Risk Servs., Inc.*, 272 Ga. App. 547, 551, 613 S.E.2d 165, 168 (2005). Under Georgia law,

> "[t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury."

*Record Town, Inc. v. Sugarloaf Mills L.P.*, 301 Ga. App. 367, 368, 687 S.E.2d 640, 642 (2009) (quoting *Schwartz v. Harris Waste Mgmt. Grp.*, 237 Ga. App. 656, 660, 516 S.E.2d 371, 375 (1999)). "As with any contract, the terms of an insurance policy bear their usual and common meanings." *Sherman & Hemstreet, Inc. v. Cincinnati Ins. Co.*, 277 Ga. 734, 737, 594 S.E.2d 648, 650 (2004). Any ambiguity in an insurance policy is construed in favor of the insured. *E.g.*, *id.* at 736, 594 S.E.2d at 650; *see also Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.*, 136 F. Supp. 2d 1340, 1350 (N.D. Ga. 2001) ("The insurer is the master of the writing, and thus it has a duty to use language that is 'clear and precise.'"); *Blueshift, Inc. v. Advanced Computing Techs., Inc.*, 273 Ga. App. 802, 805, 616 S.E.2d 816, 819 (2005) ("the entirety of the agreement should be looked to in arriving at the construction of any part. . . . The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others.") (internal quotation omitted).

### 3. *The Policy Language Regarding Post-Policy Events is Clear and Unambiguous*

The insuring provision of the Policy provides as follows:

This Policy insures [Defendant] against actual loss, including any costs, attorneys' fees and expenses provided under this Policy, resulting from the Covered Risks set forth below...[Defendant's] insurance is effective on the Policy Date. **This Policy covers** [Defendant's] **actual loss from any risk described under Covered Risks if** [1] **the event creating the**

**risk exists on the Policy Date or**, [2] **to the extent expressly stated, after the Policy Date**.

**SOF at ¶ 24 (emphasis added).**  The Policy sets forth twenty-nine (29) separately numbered covered risks which are the "Covered Risks" referred to above (collectively, the "Covered Risks", and each individually, a "Covered Risk"). Defendant contends that the Collapse is covered by Covered Risk No. 12, which provides coverage in the event [Defendant is] "required to correct or remove an existing violation of any covenant, condition or restriction affecting the Land". (Emphasis added.)  However, by its express terms, Covered Risk No. 12 is limited to matters "existing" as of the Policy Date.  The Collapse cannot trigger coverage under Covered Risk No. 12 because the 2014 Collapse undisputedly did not "exist" as of the Policy Date.  Rather, it is undisputed the Collapse did not occur until 2014, some ten (10) years after the Policy Date.[7]  Thus, Covered Risk No. 12 does not provide coverage for the Collapse.

---

[7] Defendant's contention that the Collapse falls within coverage under Covered Risk No. 12 is without merit for reasons other than the Collapse being a post-Policy event. Defendant's correspondence with the City of Atlanta demonstrates that Defendant was not "required" to "correct or remove" anything, much less "required" to "correct or remove an existing covenant, condition or restriction" affecting Lot 6. Defendant's own correspondence with the City of Atlanta demonstrates that Defendant undertook the repair of the collapsed Vault voluntarily, not because he was "required" to do so by the City of Atlanta, or by any other party.

### 4. The Policy Expressly Excludes Risks First Occurring Post-Policy

The Policy also contains the following express exclusion ("Exclusion 4(d)"):

In addition to the Exceptions in Schedule B, You [Silbiger] are not insured against loss, cost, attorneys' fees and expenses resulting from…4. Risks…(d) **that first occur after the Policy Date** – this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25. (Emphasis added.) **SOF at ¶27.**

There is nothing ambiguous about Exclusion 4(d) – it clearly and unambiguously excludes post-policy events from coverage, except with respect to Covered Risks Nos. 7, 8(d), 22, 23, 24 and 25, none of which are applicable in this case. Covered Risk No. 7 is not applicable because Covered Risk No. 7 merely extends prospective coverage for Covered Risks Nos. 1 through 6, which are not applicable because:

1. This case does not involve someone else owning any interest in Defendant's title, as might trigger coverage under Covered Risk No. 1;

2. This case does not involve someone else having rights affecting Defendants' title arising out of leases, contracts, or options, as might trigger coverage under Covered Risk No. 2;

3. This case does not involve someone else having rights affecting Defendants' title arising out of forgery or impersonation, as might trigger coverage under Covered Risk No. 3;

4.  This case does not involve someone else having an easement on Lot 6, as might trigger coverage under Covered Risk No. 4;[8]

5.  This case does not involve someone else having a right to limit Defendant's use of Lot 6, as might trigger coverage under Covered Risk No. 5; and

6.  Lastly, this case does not involve Defendant's title to Lot 6 being defective, as might trigger coverage under Covered Risk No. 6.[9]

Likewise. Covered Risks Nos. 8(d), 22, 23, 24 and 25 are not applicable because:

1.  Covered Risk No. 8(d) relates to mechanic's liens, which are not at issue here;

---

[8] Indeed, the City of Atlanta has expressly disclaimed any "easement" with respect to the use or maintenance of the Vault. **SOF at ¶43.**

[9] The Indemnity Agreement itself cannot be correctly characterized as a "title defect". The Indemnity Agreement does not grant, nor does it even purport to grant, any party any right, title or interest in or to Lot 6, nor does Defendant even allege that any party claims any such right, title or interest. Furthermore, any argument that the Indemnity Agreement somehow "clouds" Defendants' title to Lot 6, or renders it "unmarketable" is belied by the fact that the Indemnity Agreement, which is as binding on the owners of each of the other five (5) lots in Draycott Place as it is on Defendant, did not prevent Paramount Builders from selling any of the homes in Draycott Place. **SOF at ¶16.** Indeed, indemnity agreements relating to storm water detention facilities such as the Indemnity Agreement complained of by Defendant are common place in the City of Atlanta. **SOF at ¶15.**

2. Covered Risk No. 22 relates to mineral rights, which are not at issue here;

3. Covered Risk No. 23 relates to discriminatory covenants, which are not at issue here;

4. Covered Risk No. 24 relates to supplemental tax assessments, which are not at issue here; and

5. Covered Risk No. 25 relates to encroachments, which are not at issue here.

Thus, the Collapse, being a post-Policy event which is not covered by Covered Risks Nos 7, 8.d, 22, 23, 24, or 25, is excluded from coverage by Exclusion 4(d). A similar result was reached in the 2012 Georgia Court of Appeals case of *Murphy v. Ticor Title Insurance Company*. *Murphy* involved a title policy exclusion similar to Exclusion 4(d). The policy at issue in *Murphy* contained an exclusion for "adverse claims, or other matters … (d) attaching or created subsequent to Date of Policy". Murphy, the insured owner, was blocked from accessing his property by posts, a gate, chains and locks put up by a neighbor and consequently filed a claim with his title insurance company, Ticor. Ticor denied the claim because the neighbor's actions occurred after January 28, 1987, which was the effective date of Murphy's title insurance policy. The Georgia Court of Appeals found that the events affecting Murphy's use of the easement (*i.e.*, the posts, gate, chains and locks put up by the neighbor) did not occur until 2007 and 2009, many years after the date of the policy

(1987). Because the events complained of by Murphy first occurred subsequent to date of policy, they were excluded from coverage by the terms of the policy. The Georgia Court of Appeals found Murphy's policy to be "clear and unambiguous on this point".[10]

Just as in *Murphy*, exclusion 4(d) of the Policy at issue in this case is clear and unambiguous in excluding the event complained of by Defendant - the 2014 Collapse of the Vault - from coverage under the Policy. Accordingly, Plaintiff is entitled to summary judgment on its Complaint.

---

[10] *See also*, *Samuel J. Bourne v. Stewart Title Guarantee Company*, 2011 U.S. Dist. LEXIS 140895 (N.H. December 7, 2011). In *Bourne*, multiple provisions of an owner's policy were at issue, including Covered Risk #12 and Exclusion 4(d). Bourne, the insured property owner, contended that a town's interference with the installation of electrical poles on his property implicated Covered Risk #12. The U.S. District Court agreed with Stewart Title that the complained of interference did not trigger coverage under Covered Risk #12, because the insured did not provide any evidence or explain how the interference "concerned an existing violation of a condition impacting his land." Moreover, the court concluded that "Exclusion 4(d) of the title policy excludes coverage for risks that first occur after the Policy Date…[and]…Bourne has not demonstrated that the town prevented him from installing utility service as of September 2002, the date of the policy. Indeed, Bourne first sought to erect electrical poles in November 2003, more than a year after he obtained the policy. Bourne has, therefore, failed to establish" breach of his insurance policy by Stewart Title. *Id*.

**5. *The Policy Excepts from Coverage Losses Arising by Reason of Covenants, Conditions, Restrictions, Easements and/or Servitudes, such as the Recorded Indemnity Agreement***

Additionally, Schedule B of the Policy sets forth certain "Exceptions from Coverage", including Exception No. 2 which provides that the Policy "does not insure against loss or damage…which arise by reason of…2. (c)ovenants, conditions, restrictions, easements and/or servitudes. This does not impair the coverage afforded under Paragraphs 12, 13, 20, 21 and 23 of the Covered Risks". Again, the Vault, and specifically the responsibilities of Defendant and the other lot owners within Draycott Place associated with the Vault, are the subject of a recorded covenant, namely, the Indemnity Agreement. Thus, coverage for losses arising by reason of the Indemnity Agreement are excepted from Coverage by Exception No. 2, with the caveat that Exception No. 2 does not impair coverage under Covered Risks Nos. 12, 13, 20, 21, and 23. As discussed above, Covered Risk No. 12 does not provide coverage for Defendant's Losses. Likewise, Covered Risks Nos. 13, 20, 21 and 23 are not applicable because:

1. Defendant does not complain of any loss of title, as might trigger coverage under Covered Risk No. 13;

2. Defendant does not complain of an encroachment, as might trigger coverage under Covered Risk No. 20;

3. Defendant does not complain of the exercise of a right to maintain or use an easement as might trigger coverage under Covered Risk No. 21 (again, in its correspondence to Defendant, the City of Atlanta expressly disclaims any right to maintain the Vault); and

4. Defendant does not complain of any attempt to enforce a discriminatory covenant as might trigger coverage under Covered Risk No. 23.

Therefore, in addition to being excluded from coverage by Exclusion 4(d), Defendant's Losses are also excepted from coverage by Exception No. 2.

### 6. *Defendant's Affirmative Defenses Fail as a Matter of Law.*

Defendant's two enumerated affirmative defenses are both based upon the allegation that no actual controversy exists due, entirely, to Plaintiff's denial of Defendant's claim under the Policy. *See* Defendant's First Amended Response to Plaintiff's First Continuing Interrogatories. This argument, however, is belied by the plain language of the Policy.

The Policy unambiguously states that after receiving notice of a claim, FATIC may, *inter alia*, "bring or defend a legal action related to the claim" or "take other appropriate action." **SOF at ¶29.** Moreover, the Policy states that "[e]ven if we do not think that the Policy covers the claim, We may choose one or more of the options above. By doing so, We do not give up any rights." **SOF at ¶29.** Reinforcing this

condition, the next paragraph of the Policy states that "[w]hether or not We agree there is coverage, We can bring or defend a legal action, or take other appropriate action under this Policy.  By doing so, We do not give up any rights."  **SOF at ¶29.**

Accordingly, the Policy authorizes Plaintiff to deny Defendant's claim and simultaneously pursue a declaratory judgment action in this Court.  Accordingly, Defendant's affirmative defenses fail as a matter of law and do not stand as an impediment to granting Plaintiff's motion for summary judgment.

**B.    Plaintiff is Entitled to Summary Judgment on Defendants' Counterclaim**

Defendant's Counterclaim [Doc. 5] consists solely of one count for bad faith denial of a payable insurance claim pursuant to O.C.G.A. § 33-4-6.

> To support a cause of action under O.C.G.A. § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith.  A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action.  Penalties for bad faith are not authorized when the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.

*S. Fire & Cas. Ins. Co. v. Northwest Georgia Bank*, 209 Ga. App. 867, 867-68, 434 S.E.2d 729, 730 (1993) (internal quotations omitted).  *See also Morrill v. Cotton States Mut. Ins. Co.*, 293 Ga. App. 259, 264, 666 S.E.2d 582, 586 (2008) ("The law

is well settled that an insurer, uncertain how to handle a claim made on a policy, may enter upon a defense under a reservation of rights and then seek a declaratory judgment.").

Should this Court grant Plaintiff's motion for summary judgment based upon any of the above-described reasons, or any other, then it subsequently reasons that Plaintiff's actions were appropriate and, therefore, could not have been made in bad faith. Moreover, Plaintiff has demonstrated above, and the evidence shows, numerous good faith bases upon which it believed the claim to be precluded. **SOF at ¶42.** Accordingly, Plaintiff is entitled to summary judgment on Defendant's Counterclaim.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for summary judgment in its entirety.

Respectfully submitted this 10th day of December, 2015.

/s/ Gregory G. Schultz
GREGORY G. SCHULTZ
Georgia Bar No. 630260
gschultz@taylorenglish.com
CHARLES K. McKNIGHT, JR.
Georgia Bar No. 495810
cmcknight@taylorenglish.com
JASON R. CURLES
Georgia Bar No. 109550

jcurles@taylorenglish.com

**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Telephone: 770.434.6868
Facsimile: 770.434.7376

*ATTORNEYS FOR PLAINTIFF*
*FIRST AMERICAN TITLE INSURANCE*
*COMPANY*

## Rule 7.1D Certification

The undersigned counsel hereby certifies that the foregoing pleading has been prepared with Times New Roman 14-Point Font, as approved in LR 5.1C.

Respectfully submitted, this 10th day of December 2015.

/s/ Gregory G. Schultz
GREGORY G. SCHULTZ
Georgia Bar No. 630260
gschultz@taylorenglish.com
CHARLES K. McKNIGHT, JR.
Georgia Bar No. 495810
cmcknight@taylorenglish.com
JASON R. CURLES
Georgia Bar No. 109550
jcurles@taylorenglish.com

**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Telephone: 770.434.6868
Facsimile: 770.434.7376

*ATTORNEYS FOR PLAINTIFF*
*FIRST AMERICAN TITLE INSURANCE*
*COMPANY*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

FIRST AMERICAN TITLE
INSURANCE COMPANY,

      Plaintiff,

v.

MARTIN L. SILBIGER,

      Defendant.

CIVIL ACTION FILE
NO. 1:15-cv-00546-TWT

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day presented the foregoing **Plaintiff's Brief in Support of its Motion for Summary Judgment** to the Clerk of Court for filing using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

Paul W. Burke
Drew Eckl Farnham, LLP
880 W. Peachtree St.
Atlanta, GA 30309

This 10th day of December, 2015.

/s/ Gregory G. Schultz

GREGORY G. SCHULTZ
Georgia Bar No. 630260
gschultz@taylorenglish.com
CHARLES K. McKNIGHT, JR.

Georgia Bar No. 495810
cmcknight@taylorenglish.com
JASON R. CURLES
Georgia Bar No. 109550
jcurles@taylorenglish.com

**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Telephone: 770.434.6868
Facsimile: 770.434.7376

*ATTORNEYS FOR PLAINTIFF*
*FIRST AMERICAN TITLE INSURANCE*
*COMPANY*